KNUDSON, Respondent, v. POWERS, et al, Appellants.

(230 N. W. 282.)

.(File No. 6555.   Opinion filed April 11, 1930.)

*Cherry, Davenport & Braithwaite,* of Sioux Falls, for Appellants.

*Lyon, Bradford & Grigsby,* of Sioux Falls, for Respondent.

BROWN, P. J. This is an appeal from an order made upon the final report of a receiver who was appointed in an action to foreclose a real estate mortgage on property in the city of Sioux Falls, owned in equal shares by the defendants Wilson Powers and Dakota Land & Loan Company, a corporation. Plaintiff's mortgage was given originally for the sum of $9,400, subject to two prior mortgages, one for $12,000 bearing interest at 7 per cent and the other for $22,500 bearing interest at 6 per cent. At the time of the commencement of the action, plaintiff's mortgage had been reduced to $5,900 with interest at 6 per cent from August 1, 1924. Plaintiff had also paid to protect his lien $2,315.01 interest on the prior mortgages and $819.91 for insurance on the premises, and there were also unpaid and delinquent taxes on the premises to an amount exceeding $2,288.08 at the time the same were claimed to

have been paid as hereinafter referred to. The complaint asked for the appointment of a receiver to take possession of the property, collect rents, etc., and on notice to all defendants N. O. Monsrud was appointed receiver on July 27, 1925. Thereafter judgment by default was entered in the sum of $10,049.13 together with costs in the sum of $49.45, and directing a foreclosure sale of the mortgaged premises and that the receiver should in the meantime continue to collect the rents and apply the same to maintaining the propery, paying interest, etc. Pursuant to the judgment the mortgaged premises were sold to plaintiff herein for $9,000, leaving a deficiency of $1,206.10. On August 28, 1926, objections to the sale and the confirmation thereof were filed on behalf of defendants Wilson Powers and Dakota Land & Loan Company, among which objections was one claiming the purported judgment and sale thereunder were void because the judge before whom the proceedings were had was disqualified to act by reason of being a stockholder and director in Dakota Trust & Savings Bank, one of the defendants. This objection was sustained, and on November 23, 1926, the court vacated and set aside the judgment and filed a certificate signed by the judge setting forth that he deemed himself disqualified to act in any further proceedings in the action and directing that all further proceedings be had before one of the other judges of the circuit. Thereafter an application was made to vacate the receivership and require an accounting from the receiver, and on January 11, 1927, an order was entered vacating the order of the court whereby Monsrud was appointed receiver, "the same as if said order had never been entered," and requiring Monsrud to relinquish possession of the premises and file a complete account of all of his doings while he was acting as such receiver. On January 24th the receiver filed a final report, to four items of which appellants filed written objections. These items were: Receiver's fees to February 1, 1925, $250; October 9, 1920, receiver's fees, $250; November 20, 1926, receiver's fees four months, $166; October 28, 1926, interest paid, $2,288.08. The court found that reasonable compensation for the services of the receiver would be 5 per cent of the amount collected and accounted for by him, which 5 per cent amounted to $427.23, and that the balance of the fees charged in the receiver's report should be disallowed, and allowed the item of $2,288.08 objected to, on the ground that while it was paid as

interest on the prior mortgages, plaintiff had agreed in consideration of its payment to him to pay the delinquent taxes on the property, the receiver not being able to pay such taxes because he had not sufficient money in his hands to redeem the premises from tax sale and the payment of subsequent taxes by the tax purchaser, so that the court held that this payment was in reality a payment of taxes. On April 21, 1925, which was about two months before the commencement of the action, appellant Powers made an assignment to plaintiff of his undivided one-half interest in the rents and profits of the mortgaged premises until the amount secured by plaintiff's mortgage should be fully paid to him. The assignment provided that the rents collected should be applied, first, to the payment of interest on the first and second mortgages, second, to the payment of taxes on the premises, and, third, to the payment of interest and principal of the mortgage held by plaintiff and recited that it was not intended to and did not extend the time of payment of the sum secured by the mortgage, nor should it prevent the foreclosure of the mortgage by plaintiff at any time he should desire to foreclose, but in case of foreclosure the assignment of rents should remain in full force and rentals collected should be applied, as above provided, to payment of the amount secured by the mortgage. The order holds that this instrument assigns Powers' one-half interest in the rents and profits to plaintiff, finds that the balance in the hands of the receiver is $1,195.62, that disallowed items in his account amount to $278.39, making a balance to account for of $1,474.01, that out of this should be paid items for the necessary maintenance and operation of the property aggregating $592.61, and that of the remaining balance of $881.40 one-half should be paid to plaintiff under the assignment and one-half to the Dakota Land & Loan Company. From this order defendants Powers, Dakota Land & Loan Company, and Security National Bank of Fargo appeal.

■■ We think the item for compensation for the receiver was properly allowed. The right of a receiver to compensation "does not depend upon the correctness of the order of appointment where the appointment has been made by a court having general jurisdiction to take such action." 34 Cyc. 467. The application for the appointment of a receiver was delayed at least once, perhaps oftener, at the request of appellants' attorneys. After such

postponements, appellants' attorneys advised respondent's attorneys that they would not oppose the application for the appointment of a receiver. Having thus acquiesced in the receivership, they cannot be heard to oppose the allowance of a reasonable compensation to the receiver.

■■ That the amount allowed by the court was reasonable is not disputed. Regarding the allowance of $2,288.08, the receiver's report showed that it was paid to respondent as interest; but his testimony, which is undisputed, showed that he had tried with this money to redeem from tax sale and pay delinquent taxes, but that the money was not sufficient to redeem from the delinquent tax sale and pay subsequent taxes paid by the tax purchaser. The county treasurer informed him that redemption from the tax sale could not be made unless he could take up the certificate and all subsequent taxes paid by the tax purchaser. After consultation with one of the attorneys for respondent, this attorney stated that if the receiver would pay the amount of the funds he had on hand to respondent on the interest that respondent had paid on prior mortgages, respondent could make arrangements to get the additional amount with which to clean up the taxes and prevent the property from being conveyed by tax deed, and in answer to the question, "And that is what was done?" the receiver replied, "That is what was done." Appellants contend that this question and answer simply show that respondent *made arrangements* whereby he could get the additional amount to clean up the taxes and prevent the property from going to tax deed, but the court construed the question and answer as meaning that respondent actually got the additional amount and therewith "cleaned up the taxes," for the court in the order appealed from finds that the plaintiff thereafter advanced sufficient sums, with the $2,288.08, to pay the balance of the taxes, and took up the certificate of sale, and that this was equivalent to the payment by the receiver of the taxes. An affidavit by one of the attorneys for appellants was filed after the decision, in which he stated that he had investigated the records in the office of the county treasurer and found that the taxes from 1923 to 1926, inclusive, were still delinquent and that no part of the taxes had been paid at the county treasurer's office and the tax certificate was still outstanding and unredeemed. The receiver's statement, "That is what was done," is open to the interpretation

placed upon it by the court, as well as that placed upon it by appellants' counsel, and when appellants' counsel had the opportunity, on cross-examination of the receiver, to make plain what was meant by that answer and did not do so, we cannot say that the interpretation placed upon this answer by the court is not justified, nor does the affidavit made by appellants' counsel conflict with the finding of the court that respondent took up the certificate of sale. He could do so by paying the holder of the certificate of sale, and even if he took an assignment of the certificate to himself on making such payment, such assignment would, in legal effect, be a payment of the taxes. We are therefore of opinion that the evidence fairly supports the finding of the court that the $2,288.08 was, in effect, applied on the payment of taxes.

This brings us to the question whether or not in this state a receiver may be appointed in a mortgage foreclosure case with power to collect rents and profits and apply them in payment of interest on a prior mortgage or in payment of taxes on the premises. Revised Code 1919, § 1548, provides that a mortgage is a lien only, and is independent of possession. Section 1558 provides that a mortgage does not entitled the mortgagee to the possession of the property unless authorized by the express terms of the mortgage; but after the execution of the mortgage the mortgagor may agree to such change of possession without a new consideration. These sections were sections 1723 and 1733, respectively, of the Revised Code of 1877, and have remained unchanged from 1877 until the present time. The mortgagor has the right of possession until such right is cut off by foreclosure and the execution of a deed to the purchaser at the foreclosure sale. Revised Code 1919, § 2898, provides that a judgment in an action for the foreclosure of a mortgage may provide for the delivery of the possession of the premises to the purchaser; "but in no case * * * shall the possession of the premises so sold be delivered to the purchaser or person entitled thereto, until after the expiration of the period of redemption." The right to possession carries with it the right to the rents and profits. "The rents and profits of real property are the fruits of possession." Rudolph v. Herman, 4 S. D. 283, 56 N. W. 901, 904; Kettering v. Barber, 37 S. D. 602, 159 N. W. 133. The rents and profits of mortgaged premises accruing prior to the deed on foreclosure belong to the mortgagor. First

National Bank of Aberdeen v. Cranmer, 42 S. D. 404, 175 N. W. 881, 882.

But Revised Code, § 2475, provides that a receiver may be appointed in an action for the foreclosure of a mortgage "where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the conditions of the mortgage have not been performed, and that the property is probably insufficient to discharge the mortgage debt."

In Bank v. Cranmer, supra, it is said: "While, under such statute, the court can unquestionably appoint a receiver, this is for the sole purpose of preserving the property and doing that in relation to the security, which, under the mortgage contract the mortgagor should do, namely, preserve the security and see to it that no liens having priority over the mortgage are created. * * * But there is nothing in section 2475, supra, that by any fair inference can be held to authorize the court to take hold of such rentals or profits and pay same over to the mortgagee. As was well said in Marshall & Ilsley Bk. v. Cady, 76 Minn. 112, 78 N. W. 978: 'A mortgage binds only the land, and the rents and profits of the premises do not enter into, or form any part of, the security.'"

If the rents and profits do not enter into or form any part of the security, we do not see how they can be taken and applied either in payment of taxes or interest on prior mortgages, any more than they could be applied in reduction of the mortgage debt.

Where one takes a mortgage on property on which there is a prior mortgage, he knows that taxes are liable to become delinquent and that interest on the prior mortgage may not be paid, and it is no argument for the taking of rents and profits and appropriating them to the payment of taxes and interest on prior mortgages, to say that the mortgagor has agreed in the mortgage contract to pay such taxes and interest. He has also agreed in the mortgage contract to pay the mortgage debt, but we have invariably held that the rents and profits cannot be taken and paid over to the mortgagee in reduction of the mortgage debt.

In Roberts v. Parker, 14 S. D. 323, 85 N. W. 591, 593, which seems to be the first case in this state in which the right to the appointment of a receiver pending foreclosure of a real estate mortgage was considered, it is said: "It may seem inconsistent that a mortgagee can, by means of a receiver, interfere with the

rents and profits of mortgaged premises, to the possession of which he is not entitled. But such, we understand, is the law in this state, and when effect is given to all parts of the statute the result is really not unreasonable. The mortgagee may not interfere with the rents and profits prior to the expiration of the period of redemption, except where he has commenced an action for the foreclosure of his mortgage and sale of the mortgaged property, and certain specified conditions prevail, which authorize the court to control the rents and profits for his benefit by means of a receiver."

But section 2475, providing for the appointment of a receiver in an action for the foreclosure of a mortgage, does not say that a receiver so appointed may control the rents and profits for the benefit of the mortgagee. It simply provides that a receiver may be appointed, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the conditions of the mortgage have not been performed, and that the property is probably insufficient to discharge the mortgage debt. For what purpose the receiver may be appointed and what may be the extent of his authority can only be determined by a consideration of the various other provisions of our Code relating to the respective rights of the mortgagor and mortgagee. In Sherman v. Wichner, 35 S. D. 436, 152 N. W. 700, 702, it is said that it is settled in this state by statute and by the decision of this court in Roberts v. Parker, supra: "that in an action to foreclose a mortgage a receiver of the mortgaged property may be appointed where it appears that the conditions of the mortgage have not been performed, and that the property is probably insufficient to discharge the mortgage debt; *that the receiver may take possession of the mortgaged premises,* and collect and retain the rents and profits subject to the control and disposition of the court."

But the opinion in Roberts v. Parker does not say that the receiver may take possession of the mortgaged premises; it says that the court is authorized *to control the rents and profits for the benefit of the mortgagee by means of a receiver.* The right of possession is a very different thing from the right to collect or control rents and profits. In Sherman v. Wichner the right to the appointment of a receiver does not seem to have been contested. The only questions considered were the validity of the appointment made

without notice, where defendant was fully heard on motion to vacate it, and whether the allegations of the verified complaint on which the order was made were sufficient to sustain the order. In Sherman v. Harrisburg Loan Co., 46 S. D. 497, 194 N. W. 652, the question was again before this court, and an order appointing a receiver was sustained on the ground that the trial court had found that the conditions of the mortgage had not been performed, and that the property was probably insufficient to discharge the mortgage debt. Counsel for appellant contended that it was only when waste had been committed or suffered that a receiver could be appointed in an action for the foreclosure of a mortgage. This court disposed of the appeal by the statement: "The question now raised has been twice thoroughly considered and squarely passed upon by this court, viz., in Roberts v. Parker, 14 S. D. 323, 85 N. W. 591, and Sherman v. Wichner, 35 S. D. 436, 152 N. W. 700, wherein it was held that a receiver could be appointed under the circumstances here shown." But however thoroughly the question may have been heretofore considered, it still remains a bone of bitter contention who is entitled to the rents and profits when a receiver is appointed in an action for the foreclosure of a mortgage in this state. In Roberts v. Parker, it is said that the court can control the rents and profits *for the benefit of the mortgagee* by means of a receiver. In Sherman v. Wichner it is said the receiver may collect and retain the rents and profits *subject to the control and disposition of the court*. And in Sherman v. Harrisburg Loan Co., it is simply said that a receiver may be appointed, without anything being said as to the purposes for which he may be appointed, except by reference to the decisions of Roberts v. Parker and Sherman v. Wichner. In Bank v. Cranmer, supra, we say: "The only question before this court in Roberts v. Parker or Sherman v. Wichner was the authority of the court to appoint a receiver in foreclosure action. Whether rents and profits collected by such receiver could be applied to the mortgage debt was not before this court for consideration in either case, and nothing is said in either case in relation thereto."

Neither was the question whether rents and profits could be applied in payment of taxes or of interest on a prior mortgage before the court for consideration in either case, and nothing was said in either case in relation thereto. Nor was the question

whether or not any part of the rents and profits could be taken and applied in payment of taxes before the court in Bank v. Cranmer. The receiver's report in that case showed that part of the rents collected had been paid out for taxes and repairs, but neither of these payments was contested, and whether any part of the rents and profits could be applied in payment of taxes was neither before the court nor decided in that case. Nor was the question of "whether rents and profits could be applied in payment of taxes or interest on a prior mortgage" decided in Sherman v. Harrisburg Loan Company, supra. The only question in that case was whether a receiver could be appointed where the court found that the conditions of the mortgage had not been performed and that the property was probably insufficient to discharge the mortgage debt. What disposition could lawfully be made of rents and profits, if collected by the receiver, was neither decided nor before the court for decision. It thus appears that the precise question whether a receiver may be authorized to collect rents and profits during the period when the mortgagor is entitled to possession, and apply such rents and profits in payment of taxes or interest on a prior mortgage, has not heretofore been expressly decided by this court. But in Bank v. Cranmer it is expressly decided that the rents and profits prior to the issuance of a deed on foreclosure belong to the mortgagor, and that the court is without power to authorize a receiver to use any part thereof to pay the mortgage indebtedness. In the latter case it is said that, while "the court can unquestionably appoint a receiver, this is for the sole purpose of preserving the property and doing that in relation to the security, which, under the mortgage contract, the mortgagor should do, namely, preserve the security and see to it that no liens having priority over the mortgage are created." Failing to pay taxes does not *create* a lien having priority over the mortgage. The lien of taxes is created when the taxes are levied and entered upon the tax list, which must be delivered to the county treasurer on or before the first day of January following the levy, and the taxes do not become delinquent nor is the mortgagor in any default for failure to pay them until the first day of May thereafter. Neither does the accumulation of interest upon a prior mortgage constitute the creation of a lien. The lien of such interest is created when the mortgage is given.

We can see no logical ground on which it may be said that

rents and profits cannot be taken to pay any part of the mortgage indebtedness, but may be taken to apply on taxes on the mortgaged property.

█ A mortgagee has the right to pay, on his own account, interest on a prior mortgage or taxes accruing on the land in order to preserve his mortgage security, and the amount of such payments may be added to the indebtedness for which the mortgage stands as security, under the provisions of Rev. Code. 1919, §§ 1539-1541. Omlie v. O'Toole, 16 N. D. 126, 112 N. W. 677. But this is an altogether different thing from saying that he may take rents and profits which belong to the mortgagor for the payment of such interest and taxes.

█ Where two statutes apparently conflict, it is the duty of the court to give effect to both, in so far as it can be done, and we think it quite possible by reasonable construction to give effect both to the statutes providing that the mortgagor is entitled to the possession of the mortgaged premises until the expiration of the period for redemption, and also to the statute providing that in an action to foreclose a mortgage a receiver may be appointed. The receiver may be appointed for the purpose of preserving the property from waste or physical deterioration; or, in the case of a chattel mortgage, from being lost, removed, or materially injured. But we do not believe that the fact that the amount due on a prior mortgage may be increased over the face thereof by a failure to pay interest, or that the lien of delinquent taxes may accrue, both of which a mortgagee is bound to know are liable to occur, can authorize the taking of the rents and profits which belong to the mortgagor and applying them to the payment of such taxes or interest. Nolte v. Morgan, 86 Kan. 823, 122 P. 886; Davis v. Dale, 150 Ill. 239, 37 N. E. 215; Farm Mortgage Loan Co. v. Pettet, 51 N. D. 491, 200 N. W. 497, 36 A. L. R. 598.

In the last-cited case, the Supreme Court of North Dakota had under consideration statutes which in every substantial provision were the same as ours in regard to the right of a mortgagor to the possession of mortgaged premises, and the appointment of a receiver in an action for foreclosure of a mortgage, and, after a very thorough review of the legislation of the Dakotas from territorial days down to the time of the decision, reached the conclusion that the rents and profits of mortgaged premises prior to the ex-

piration of the time for redemption could not be applied either to the payment of interest on a prior mortgage, or of taxes on the mortgaged premises. With this we agree.

Respondent argues that appellants, not having objected to the appointment of a receiver and having seen him enter into possession of the premises and collect the rents for a period of more than a year, must be held to have acquiesced in what the receiver has done, and are estopped to question the payment of the $2,288.08. While it may be said that appellants acquiesced in the appointment of the receiver and in his collecting the rents and profits, they did not acquiesce in the payment of the $2,288.08, but on the contrary very explicitly objected to any such payment two months before it was made, and as shown by the testimony of the receiver himself, appellants advised him that the validity of his appointment had been questioned in a proceeding then pending before the circuit court, and that should his appointment be held void serious complication as to any payments he should make might result, and warned him not to make any further payment of any size without first consulting with the attorneys for the appellants. In view of this testimony it certainly cannot be said that appellants acquiesced in the making of that payment.

It is finally contended by appellants that the assignment of Powers' undivided one-half interest in the rents and profits was void, and therefore the court erred in directing one-half of the balance remaining in the hands of the receiver to be paid to plaintiff. It is first contended that the assignment was without consideration. The assignment was given as additional security for the pre-existing mortgage debt, and whether there was a consideration therefor should be determined by the same rules as are applicable to a chattel mortgage given as security. It is well settled that, "A pre-existing debt is, as between the parties, a sufficient consideration for a chattel mortgage given to secure it." 11 C. J. 451, § 67. A pre-existing debt is sufficient consideration for additional security given for its payment. 13 C. J. 362, § 228. Rev. Code 1919, § 840, provides: "An existing legal obligation resting upon the promiser * * * is also a good consideration for a promise, to an extent corresponding with the extent of the obligation, but no further or otherwise." We think, under the provisions of this sec-

tion of the Code, there was a sufficient consideration for the assignment.

■ It is also contended that a tenant in common cannot convey an easement in the co-owned premises without consent of the co-owner, and it is argued that the right of a co-tenant to an undivided share in the rents and profits of the property owned in common is an easement. Rev. Code, § 337, enumerates easements, and rent of land is not among them. We know of no principle of law that prevents a tenant in common from assigning his share of the rents and profits of real estate. "An assignment is a transfer of property, or of any estate or right therein. 5 C. J. 836. The right to the rent of land is property, and may be transferred. Code, § 519." Tabor State Bank v. Jacobs, 53 S. D. 635, 222 N. W. 141, 143. The transfer by Wilson of his undivided one-half of the rents and profits conflicts with no right of his cotenant.

The order appealed from should be modified to the extent of requiring the receiver to account to the mortgagors for the item of $2,288.08; that of the total amount to be thus accounted for, one-half to be paid to the Dakota Land & Loan Company, and the other one-half to plaintiff under the assignment from defendant Powers to him. The cause is therefore remanded, with directions to modify the order in harmony with this opinion, and as so modified the order will stand affirmed. No costs to be taxed in this court.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.